IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

07/14/2026

LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

Terrence Boyd-Nordstrom,            )
                                    )
            Plaintiff,              )
                                    )
v.                                  )
                                    )    Civil Action No. 5:25-cv-00096
Benjamin Baker                      )
                                    )
            and                     )
                                    )
RSW Regional Jail Authority,        )
                                    )
            Defendants.             )

## MEMORANDUM OPINION

This matter is before the court on Defendant RSW Regional Jail Authority's ("RSWRJA") motion to dismiss for failure to state a claim. (Dkt. 13.) Plaintiff Terrence Boyd-Nordstrom brings this civil rights action under 42 U.S.C. § 1983, asserting that RSWRJA and Benjamin Baker violated his Fourteenth Amendment rights under the Due Process Clause by using excessive force. Specifically, he alleges that RSWRJA is subject to municipal liability for the physical abuse he suffered as a pretrial detainee at RSW Regional Jail. Because Boyd-Nordstrom's allegations in the complaint do not state a viable claim against RSWRJA under a *Monell* theory of liability, the court will grant RSWRJA's motion to dismiss.

## I.    Background

### A.  Factual History[1]

Boyd-Nordstrom's complaint originates from an assault by correctional officers that occurred at RSW Regional Jail, where he was a pretrial detainee.  (Compl. ¶ 12 (Dkt. 1).)  On the evening of October 3, 2023, Boyd-Nordstrom was on a virtual video visit with a friend in the "pod."  (*Id.* ¶¶ 12, 15.)  Although it was time for his nightly medical check, the nurse agreed to return later so that Boyd-Nordstrom could finish his video visit.  (*Id.* ¶¶ 13–14.)

Several minutes later, Defendant Baker entered the pod.  (*Id.* ¶ 15.)  Baker announced that he was "not on bullshit" and instructed Boyd-Nordstrom to "take his medication and lock down" for the night.  (*Id.*)  When Boyd-Nordstrom asked to finish his visit first, Baker told Boyd-Nordstrom that he would lock down the whole pod if Boyd-Nordstrom did not lock down.  (*Id.* ¶¶ 16–17.)  Boyd-Nordstrom responded that "this was fine."  (*Id.* ¶ 17.)

An argument and name-calling ensued as Boyd-Nordstrom continued his video visit and Baker locked down the pod.  (*Id.* ¶¶ 18–19.)  The two continued to argue as Baker walked Boyd-Nordstrom to his cell.  (*Id.* ¶ 21.)  Boyd-Nordstrom entered his cell, where Baker's cellmate "was already locked down."  (*Id.* ¶¶ 23–24.)  Baker then announced that he "smelled hooch" and would perform a search.  (*Id.* ¶ 25.)  Boyd-Nordstrom's cellmate was handcuffed.  (*Id.* ¶ 26.)  Boyd-Nordstrom objected to the search because their cell had recently been searched, and nothing had turned up.  (*Id.*)

---

[1] The facts in this section are taken from Boyd-Nordstrom's complaint, (Dkt. 1), and are presumed true for purposes of resolving the motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At some point, Sergeant Vanmeter arrived, grabbed Boyd-Nordstrom's arm, and escorted him out of the cell. (*Id.* ¶ 28.) As Vanmeter and Boyd-Nordstrom were walking out of his cell, they passed by Baker, and Boyd-Nordstrom cleared his throat. (*Id.* ¶ 30.) In response, Vanmeter pushed Boyd-Nordstrom out of his cell and against the railing, saying, "oh no you don't." (*Id.* ¶ 31.) Boyd-Nordstrom put his hand up and objected, saying that he was not going to spit on Baker. (*Id.*) Baker then approached Boyd-Nordstrom and asked, "oh yeah, you think you're fucking cool?" (*Id.* ¶ 32.) Baker attempted to punch Boyd-Nordstrom, grabbed him, and slammed him to the ground. (*Id.* ¶ 33.) Boyd-Nordstrom was caught between Vanmeter and Baker as they pulled him in opposite directions. (*Id.* ¶¶ 34–35.) Even though Boyd-Nordstrom was not moving, Baker repeatedly kicked Boyd-Nordstrom in the groin and screamed "stop resisting." (*Id.* ¶ 35.)

Additional officers arrived as Vanmeter and Baker forced Boyd-Nordstrom to his stomach to handcuff him. (*Id.* ¶¶ 36–37.) The officers continued to kick Boyd-Nordstrom in the groin. (*Id.* ¶ 38.) Each time Boyd-Nordstrom "gave them his hands to put behind his back, an officer would grab [Boyd-Nordstrom] by the back of his head and chest, and slam him against the ground." (*Id.*) In reaction to being thrown to the ground, Boyd-Nordstrom moved his hands to try to protect his head. (*Id.* ¶ 39.) At the same time, he yelled that he was willing to be handcuffed and asked them to stop slamming his head. (*Id.*) Due to the repeated slamming, Boyd-Nordstrom's forehead split open and he vomited. (*Id.* ¶ 40.)

The officers eventually stopped hitting Boyd-Nordstrom, handcuffed him, and walked him down the stairs towards the entrance of the pod. (*Id.* ¶¶ 41–42.) Boyd-Nordstrom

stopped walking because Baker was twisting Boyd-Nordstrom's wrists in the handcuffs, cutting off the circulation to his hands. (*Id.* ¶¶ 42–43.) When Boyd-Nordstrom told the other officers what was happening, Baker threw Boyd-Nordstrom back down to the ground so that he slid across the ground on his stomach. (*Id.* ¶¶ 44–45.)

The officers eventually allowed Boyd-Nordstrom to stand up and walked him to "the intake," where Boyd-Nordstrom explained what happened. (*Id.* ¶¶ 46–47.) Baker, who was still twisting Boyd-Nordstrom's wrists in the handcuffs, was instructed to step away from Boyd-Nordstrom. (*Id.* ¶ 48.) While the officers held a meeting, the nurse examined Boyd-Nordstrom's injuries. (*Id.* ¶ 49.) Boyd-Nordstrom was "in shock and traumatized." (*Id.* ¶ 50.) His head was swollen, and the wound on his forehead was bleeding. (*Id.* ¶¶ 50, 55.) He also had a black eye and cuts along his arms. (*Id.*) Sergeant Turley took pictures of Boyd-Nordstrom's injuries before he was taken to the hospital. (*Id.* ¶¶ 51–52.)

Boyd-Nordstrom spent time at the hospital, where his "report was labeled 'assault/victim.'" (*Id.* ¶¶ 53–54.) He received ice and pain medication, and he underwent CAT scans of his head and groin. (*Id.* ¶ 52.) Boyd-Nordstrom returned from the hospital, and the jail released him to general population after investigating the incident. (*Id.* ¶ 56.) He was "never charged" following the incident. (*Id.*)

Baker and Boyd-Nordstrom had disputes before the October 3 incident. (*Id.* ¶ 57.) Baker had previously threatened to "beat the fuck out of" Boyd-Nordstrom, prompting Sergeant Henson to tell Baker to go on break to cool down. (*Id.* ¶ 58.) Baker had also pushed

- 4 -

Boyd-Nordstrom into a cell as the door was closing, causing Boyd-Nordstrom to experience concussion symptoms.  (*Id.* ¶ 59.)

### B. Procedural History

On September 15, 2025, Boyd-Nordstrom filed a complaint against Defendants Baker and RSWRJA.  (Dkt. 1.)  His complaint asserts one count seeking to hold Defendants jointly and severally liable under 42 U.S.C. § 1983.  (*Id.* at 8, 11.)  Boyd-Nordstrom claims that Defendant Baker violated the Fourteenth Amendment Due Process Clause by failing to protect Boyd-Nordstrom, a pretrial detainee, from violence and by subjecting him to excessive force.  (*Id.* ¶¶ 65–69.)  Boyd-Nordstrom claims that RSWRJA is subject to *Monell* liability for Baker's alleged Fourteenth Amendment violations, "including but not limited to a failure to train theory."  (*Id.* ¶¶ 7, 8, 70); *see Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978).  Boyd-Nordstrom seeks compensatory damages from Defendants, as well as punitive damages, attorney's fees and costs, and other relief the court deems equitable.  (Compl. at 11.)

On December 18, 2025, RSWRJA moved to dismiss the complaint with prejudice for failure to state a claim.  (Dkt. 13.)  Boyd-Nordstrom responded, (Dkt. 15), RSWRJA replied, (Dkt. 16), and the motion is now ripe for review.

### II.      Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).  To survive a Rule 12(b)(6) motion, a complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A claim is plausible on its face where plaintiff's factual allegations "allow[] the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In reviewing a motion to dismiss for failure to state a claim, the court must accept as true all

factual allegations in the complaint and construe them in the light most favorable to the

plaintiff.  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020).  However, "threadbare

recitals of the elements of a cause of action," "legal conclusion[s] couched as factual

allegation[s]," and "mere conclusory statements" will not survive a motion to dismiss.  *Iqbal*,

556 U.S. at 678.

### III.    Analysis

### A.  RSWRJA's Capacity to Be Sued Under § 1983

RSWRJA first asserts that it is not a "person" within the meaning of § 1983, such that

it is not subject to suit in this case.  The court disagrees.

Section 1983 imposes liability on any "person" who, acting under color of state law,

deprives another person of "any rights, privileges, or immunities secured by the Constitution."

42 U.S.C. § 1983.  Municipalities and units of local government are considered "persons" for

purposes of a § 1983 claim.  *See Monell,* 436 U.S. at 690.  Conversely, states and governmental

entities that are considered "arms of the state" under the Eleventh Amendment are not

considered "persons" under § 1983.[2]  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 70

(1989).

---

[2] The court recognizes that "Eleventh Amendment immunity and 'personhood' under § 1983 are distinct issues."
*Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F. Supp. 2d 558, 571 (E.D. Va. 2011), *vacated in part on other grounds*, No. 3:10-cv-00867, 2012 WL 12931710 (E.D. Va. Jan. 12, 2012); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1989).  Still,

The Fourth Circuit has clarified that regional jail authorities are not "arms of the state." *Kitchen v. Upshaw*, 286 F.3d 179, 185 (4th Cir. 2002). While state law enables localities to create regional jail authorities like RSWRJA, the Fourth Circuit evaluated several factors to determine that there is not a "close link" between a jail authority and the state. *Id.* at 184. First, an authority can sue and be sued in its own name, and any judgment issued does not come out of the Virginia state treasury. *Id.* at 184; *see* Va. Code Ann. § 53.1-95.2 (establishing that "[t]he governing bodies of two or more counties, cities, or towns or a combination thereof may . . . create a jail authority"); *id.* § 53.1-95.7 (setting out a Virginia jail authority's power to exercise "public and essential governmental functions," including "[t]o sue and be sued in its own name"). Second, participating localities, not the state, retain "substantial control" over an authority's operation and are liable for a majority of the expenses. *Kitchen*, 286 F.3d at 185. Finally, the statutory scheme itself demonstrates that the purpose of the authorities is to address local and regional jailing problems, not statewide concerns. *Id.*

Accordingly, this court has repeatedly held that jail authorities can be sued under § 1983 and subject to *Monell* liability. *See, e.g.*, *Branham v. City of Lynchburg*, 644 F. Supp. 3d 215, 219 (W.D. Va. 2022) (holding that "regional jail authorities can be sued under § 1983 for a *Monell*-type claim"); *Galanti v. Duffield Jail*, No. 7:24-cv-00004, 2025 WL 1872493, at *2 (W.D. Va. July 7, 2025) ("[T]he jail authority . . . is subject to suit under § 1983 . . . ."); *Sluss v. S.W.R.J. Haysi*, No. 7:24-cv-00697, 2024 WL 4652214, at *1 (W.D. Va. Nov. 1, 2024); *Hutton v. W. Va. Reg'l*

---

"they are analytically tied: both turn on whether a governmental entity is so closely intertwined with the State as to be able to invoke the same protections as the State itself." *Newbrough*, 822 F. Supp. 2d at 571.

*Jail Auth.*, No. 7:25-cv-00314, 2026 WL 265263, at *2–3 (W.D. Va. Feb. 2, 2026). Thus, RSWRJA is subject to suit under § 1983.

RSWRJA cites several decisions from this district for the proposition that RSWRJA is not a "person" for purposes of § 1983. (*See* Def.'s Br. at 2–3 (Dkt. 14).) But RSWRJA fails to distinguish between a jail *facility*, which is not a "person" under § 1983, and a jail *authority*, which is subject to § 1983 liability as a unit of municipal government.[3] *See Thacker v. SWVRJA-Duffield*, No. 7:22-cv-00226, 2022 WL 2003583, at *1 (W.D. Va. June 6, 2022) (dismissing the claim against the Southwest Virginia Regional Jail Authority's Duffield "jail facility itself" because it "cannot qualify as a *person*" under § 1983, but proceeding to analyze the sufficiency of the *Monell* claims against the Southwest Virginia Regional Jail *Authority*). Here, Boyd-Nordstrom can assert a claim under § 1983 against RSWRJA because he sues a regional authority operating the jail, not the jail facility.

### B. *Monell* Claims Against RSWRJA

Under *Monell*, a municipality or local government can be sued under § 1983 for deprivations of a person's federal statutory or constitutional rights. 436 U.S. at 690. Municipal entities are responsible for "their *own* illegal acts" and cannot be held liable under a theory of vicarious liability. *Connick v. Thompson,* 563 U.S. 51, 60 (2011). Instead, municipal liability results only when "execution of a government's policy or custom, whether made by its

---

[3] RSWRJA relied on Western District of Virginia decisions that dismissed jail facilities, not jail authorities. *See Preval v. Reno*, No. 99-6950, 2000 WL 20591, at *1 (4th Cir. Jan. 13, 2000) (dismissing defendant Piedmont Regional Jail because a jail is not a person under § 1983); *Payne v. Causey*, No. 7:25-cv-00708, 2025 WL 3225050, at * 2 (W.D. Va. Nov. 19, 2025) (dismissing defendant Western Virginia Regional Jail); *Pilkins v. Sw. Va. Reg'l Jail Auth.-Tazewell*, No. 7:24-cv-00564, 2025 U.S. Dist. LEXIS 12946, at *1 (W.D. Va. Jan. 23, 2025) (dismissing defendant Southwest Virginia Regional Jail Authority-Tazewell, a jail facility); *Conway v. Middle River Reg'l Jail*, No. 7:22-cv-00734, 2023 U.S. Dist. LEXIS 101701, at *1 (W.D. Va. June 11, 2023) (dismissing defendant Middle River Regional Jail).

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell,* 436 U.S. at 694. To constitute a "*Monell* claim" against RSWRJA, an official policy, decision, or custom must have been a "moving force" in the alleged constitutional violations perpetrated by its employees. *Id.* at 694–95. A policy or custom for which a municipal entity may be liable can arise "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (cleaned up).

Count I only explicitly alleges that RSWRJA "failed to train its employees." (Compl. ¶ 70.) But the complaint also states that RSWRJA is directly liable under *Monell*, "including *but not limited to* a failure to train theory." (*Id.* ¶ 8 (emphasis added).) This court will address the "failure to train" theory before turning to other possible theories of *Monell* liability. Under any theory of *Monell* liability, however, Boyd-Nordstrom does not allege sufficient facts to state a claim upon which relief can be granted.

1.  Failure to Train Theory

To hold RSWRJA liable for a failure to train its employees, Boyd-Nordstrom must plausibly demonstrate that (1) "the nature of [RSWRJA's] training was insufficient in some particularized manner"; (2) "the insufficiency of the training was a deliberate or conscious choice" by RSWRJA; and (3) "a causal relationship existed between the failure-to-train and

the injuries [Boyd-Nordstrom] suffered." *Palma v. Montgomery Cnty.*, 598 F. Supp. 3d 288, 298

(D. Md. 2022) (citing *Washington v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 533 (D. Md. 2020)).

Moreover, as to the first element, Boyd-Nordstrom must identify a "specific deficiency" in the

training, rather than relying solely on generalized statements about the quality or effectiveness

of the training. *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987). Examples of training

policy deficiencies include an express or tacit approval of unconstitutional conduct, as well as

a failure to "prohibit or discourage readily foreseeable conduct" within the employees' scope

of duty. *Id.*

The only allegation Boyd-Nordstrom makes regarding RSWRJA's failure to train is that

the facts "provide a reasonable inference that Defendant RSWRJA failed to train its

employees." (Compl. ¶ 70.) This allegation amounts to a "mere conclusory statement[]."

*Jackson v. Brickey*, 771 F. Supp. 2d 593, 604 (W.D. Va. 2011). At the motion to dismiss stage,

the court does not expect a plaintiff to provide a "rich set of facts" or "specific details

regarding the municipal actor's internal policies and training procedures." *Booker v. City of

Lynchburg*, No. 6:20-cv-00011, 2020 WL 8513807, at *6 (W.D. Va. Nov. 12, 2020), *report and

recommendation adopted*, 2021 WL 519905 (W.D. Va. Feb. 11, 2021) (cleaned up). Even so,

allegations that are "no more than conclusions" are not enough. *Jackson*, 771 F. Supp. 2d at

604 (quoting *Iqbal,* 556 U.S. at 679). Without any factual support, Boyd-Nordstrom's single

conclusory statement is insufficient to allege that RSWRJA failed to train its employees. *See

Green v. Lilly*, No. 7:23-cv-00151, 2023 WL 6564907, at *7 (W.D. Va. Oct. 10, 2023) ("It is

clear that stating a claim for failure to train requires more than bald assertions that police

officers were not properly trained."); *Brown v. City of Lynchburg*, No. 6:23-cv-00054, 2024 WL 2724191, at *8 (W.D. Va. May 28, 2024) (holding that allegations of fifteen prior use-of-force incidents "cannot save Plaintiffs' over-general allegation as to training deficiency"); *see also Staton v. Doe*, No. 6:15-cv-00034, 2016 WL 6493418, at *4 (W.D. Va. Oct. 12, 2016), *report and recommendation adopted*, 2016 WL 6471250 (W.D. Va. Nov. 1, 2016) (granting motion to dismiss where plaintiff failed to provide "factual allegations that provide more than a formulaic recitation of the elements of a failure to train claim").

Boyd-Nordstrom also falls short of plausibly alleging that any failure to train reflects RSWRJA's "deliberate indifference" to the constitutional rights of rights of pretrial detainees. *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989). "[O]nly where a failure to train reflects a 'deliberate' or 'conscious' choice" does the failure become a "policy" and open the municipality to liability under § 1983. *Id.* at 389. Deliberate indifference is a "stringent" standard, requiring municipal actors to have "actual or constructive notice that a particular omission in their training program" caused the alleged constitutional deprivations. *Connick*, 563 U.S. at 61.

A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate the deliberate indifference element of a failure to train claim. *Connick,* 563 U.S. at 61. Here, Boyd-Nordstrom's allegations of isolated incidents of misconduct are insufficient to demonstrate a pattern of constitutional violations. *See Mullen v. Town of Sunset Beach, N. Carolina*, 175 F.4th 466, 472–73 (4th Cir. 2026); *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (per

curiam) (rejecting municipal liability based on "isolated incidents"); *Connick*, 563 U.S. at 62 (four prior incidents of misconduct insufficient to establish pattern); *Lytle*, 326 F.3d at 474 (three prior incidents insufficient); *Nicholson v. Balt. Police Dep't*, No. CV DKC 20-3146, 2021 WL 1541667, at \*8 (D. Md. Apr. 20, 2021) (single prior incident insufficient).  In Subsection III.B.2.ii, the court discusses in further detail how Boyd-Nordstrom's complaint lacks factual allegations showing a pattern of similar constitutional violations.

Nonetheless, in some cases, "a plaintiff also can show that training was inadequate when a situation occurred 'with sufficient frequency,' and the deficient training made 'the specific violation almost bound to happen, sooner or later.'" *Mullen*, 175 F.4th at 473 (quoting *Lytle*, 326 F.3d at 474; *Spell*, 824 F.2d at 1390) (internal citations omitted); *see also Est. of Jones by Jones v. City of Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020), *as amended* (June 10, 2020) (describing the "*Canton* exception" to the pattern of similar violations usually required for failure to train claims).  Under this theory, a single incident of misconduct may be sufficient for liability to attach.  *Est. of Jones*, 961 F.3d at 672.  But the need for more or different training must be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that the municipality can reasonably be considered to be "deliberately indifferent to the need."  *Id.* (quoting *City of Canton,* 489 U.S. at 390).  In this context, the deliberate indifference standard still requires "some level of notice" such that "a municipality either knew or should have known about the deficiency, so it could remedy that deficiency."  *Id.*

To support his deliberate indifference argument, Boyd-Nordstrom contends that because "separate employees" took part in the unconstitutional conduct, the court can

reasonably infer that RSWRJA failed to train its employees in a way that "manifests deliberate indifference." (Pl.'s Br. at 8–9 (Dkt. 15).) But Boyd-Nordstrom does not allege that situations like his own occurred with "sufficient frequency" to raise a reasonable inference that RSWRJA was aware of, or should have been aware of, an "obvious" need for more or different training. *Mullen*, 175 F.4th at 473 (quoting *Lytle*, 326 F.3d at 474; *Canton*, 489 U.S. at 390 n.10). The fact that the incident involved multiple officers is not, standing alone, sufficient to plead RSWRJA's deliberate indifference. *See Est. of Jones*, 961 F.3d at 672 ("[F]ive officers acting at once could not have put the City on earlier notice of the need to better train its officers . . . ."); *see also Booker v. City of Lynchburg*, No. 6:20-cv-00011, 2020 WL 4209057, at *9 (W.D. Va. July 22, 2020) (dismissing failure to train where the plaintiff "failed to plead non-conclusory allegations showing that the City either could have or should have been on notice of the training deficiencies alleged before the *three* officers attacked the Plaintiff" (emphasis added)); *Scheffer v. Albemarle Cnty.*, No. 3:23-cv-00048, 2024 WL 2958952, at *4 (W.D. Va. June 12, 2024) (dismissing the plaintiffs' failure to train claim where they "merely state[d] that" multiple officers' actions "demonstrate that Defendant Albemarle County has failed to adequately train its officers").

Without alleging any facts about the type of training at issue, the specific deficiency in the training, RSWRJA's awareness of the deficiency, and a causal link between the training deficiency and the constitutional injury, Boyd-Nordstrom does not adequately state a claim that RSWRJA failed to train its employees.

2. Other *Monell* Theories

Boyd-Nordstrom briefly alleges other theories of *Monell* liability by stating that his claim against RSWRJA "includ[es] but [is] not limited to a failure to train theory." (Compl. ¶ 8.) The complaint does not include sufficient facts to state a claim under any other municipal liability theory.

i.    *Express Policy or Decision by Policymaking Authority*

A policy or custom for purposes of municipal liability may be shown "through an express policy, such as a written ordinance or regulation," or "through the decisions of a person with final policymaking authority." *Lytle*, 326 F.3d at 471. The complaint is devoid of allegations that an express policy of RSWRJA or a decision by a person with policymaking authority at RWSJA caused the alleged constitutional violations. Thus, Boyd-Nordstrom has not alleged either of the first two *Monell* theories.

ii.    *Custom by Condonation*

Boyd-Nordstrom does not allege sufficient facts to support the only remaining *Monell* theory, custom "by condonation." *Spell,* 824 F.2d at 1390. Under this theory, a municipality can be liable for § 1983 violations if policymakers fail "'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (quoting *Spell*, 824 F.2d at 1389). To state a claim for custom by condonation, Boyd-Nordstrom must allege facts that point to a "persistent and widespread practice of municipal officials, the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their

'deliberate indifference.'" *Id.* at 402 (citing *Spell*, 824 F.2d. at 1386–91) (cleaned up). "Both knowledge and indifference can be inferred from the 'extent' of employees' misconduct." *Id.* at 402–03. That said, RSWRJA cannot be held liable "for mere 'isolated incidents of unconstitutional conduct by subordinate employees . . . . Rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice.'" *Smith v. Ray*, 409 F. App'x 641, 650 (4th Cir. 2011) (unpublished) (quoting *Lytle*, 326 F.3d at 473). Thus, "[s]poradic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Owens*, 767 F.3d at 403 (citing *Spell*, 824 F.2d at 1387).

Boyd-Nordstrom argues that, along with the involvement of other officers in the challenged conduct, prior incidents between Baker and Boyd-Nordstrom demonstrate that RSWRJA has a "custom or policy" of ignoring the use of excessive force against inmates. (*See* Pl.'s Br. at 8.) Boyd-Nordstrom identifies two prior interactions between Baker and Boyd-Nordstrom: (1) when Baker threatened to "beat the fuck out of" Boyd-Nordstrom in front of Sergeant Henson, and (2) when Baker pushed Boyd-Nordstrom into a closing cell door, causing Boyd-Nordstrom to suffer "concussion symptoms." (*See* Compl. ¶¶ 58–59.) But, for several reasons, these allegations of isolated incidents do not plausibly show that RSWRJA was deliberately indifferent to a "widespread pattern of unconstitutional conduct." *Owens*, 767 F.3d at 402.

First, Baker's verbal threat to assault Boyd-Nordstrom does not amount to a constitutional violation. *See Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) (unpublished) ("Mere threats or verbal abuse by prison officials, without more, do not state a

cognizable claim under § 1983."); *Hess v. SWVRJ-Haysi Facility,* No. 7:25-cv-00576, 2026 WL

27288, at *5 (W.D. Va. Jan. 5, 2026) ("Verbal abuse alone does not establish a violation of the

Constitution."). This leaves only one past incident of alleged physical force, where Baker

pushed Boyd-Nordstrom into a closing cell door. (*See* Compl. ¶ 59.) "'Not every push or

shove' violates a person's constitutional rights . . . ." *Jackson v. Johnson*, No. 7:10-cv-00337,

2010 WL 3074385, at *2 (W.D. Va. Aug. 4, 2010) (quoting *Johnson v. Glick*, 481 F.2d 1028,

1033 (2d Cir. 1973)); *see also Davis v. Madisen,* No. 8:25-cv-02548, 2025 WL 3557758, at *8

(D.S.C. June 20, 2025), *report and recommendation adopted*, 2025 WL 3204564 (D.S.C. Nov. 17,

2025) (dismissing claim for excessive force where plaintiff's allegation that an officer slammed

a door on his foot failed to allege the injury was intentional, not merely negligent).

Even if this push constituted excessive force, Boyd-Nordstrom has still only alleged a

single incident of excessive force by Baker before the October 3 incident. Two isolated

incidents of misconduct are insufficient to allege that RSWRJA was deliberately indifferent to

a "widespread pattern of constitutional violations." *See Green*, 2023 WL 6564907, at *5

("Allegations of two discrete prior instances, without more, does not establish that the Jail had

a custom or practice of unconstitutional excessive force such that it was deliberately indifferent

to the use of excessive force by its officers."); *Nicholson*, 2021 WL 1541667, at *9 (finding that

an "isolated incident of prior misconduct" failed to state a *Monell* claim based on a theory that

the defendant acquiesced in a widespread pattern of constitutional violations); *Saltz v. City of

Frederick*, 538 F. Supp. 3d 510, 558 (D. Md. 2021) (finding that "three examples of allegedly

unconstitutional incidents on two dates" are not enough to show liability under condonation

theory).  And, as the court explained above, the fact that multiple officers were involved in the single incident at issue, without more, does not adequately show that RSWRJA had actual or constructive knowledge of such conduct, or that there existed a pervasive and widespread practice of excessive force.  *See Est. of Jones*, 961 F.3d at 672 ("[F]ive officers acting at once could not have put the City on earlier notice of the need to better train its officers as to the existing use-of-force policy.").

Further, Baker's past misconduct only involved Boyd-Nordstrom; Boyd-Nordstrom does not allege physical abuse or similar unconstitutional conduct towards other inmates.  (*See* Compl. ¶¶ 12–59.)  The lack of allegations regarding the treatment of other pretrial detainees undermines Boyd-Nordstrom's attempt to allege an official policy or practice to support a *Monell* claim.  *See Royal v. VitalCore Health Strategies, LLC*, No. 3:23-cv-00064, 2024 WL 4270011, at *3 (W.D. Va. Sept. 23, 2024) (holding the plaintiff did not demonstrate a pattern of violations where he failed to allege "that anyone else incarcerated at [the jails] [had] been denied medical treatment or that a lack of medical care [was] common across facilities administered by [the defendant].").  As the Fourth Circuit recently held, where the only specific instances alleged in support of a *Monell* claim are plaintiff's own, this is "insufficient to support a reasonable inference that there is a 'persistent and widespread practice' so as to plausibly allege a *Monell* claim."  *Johnson v. Balt. City*, 163 F.4th 808, 823 (4th Cir. 2026).

Boyd-Nordstrom cites *McCaffrey v. Virginia Peninsula Regional Jail Authority* to argue that he has sufficiently alleged that RSWRJA has an official custom or policy of "turning a blind eye" to the use of excessive force against detainees.  (*See* Pl.'s Br. at 8–9 (citing *McCaffrey*, No.

- 17 -

4:18-cv-00154, 2019 WL 5445752, at *11 (E.D. Va. Oct. 4, 2019), *report and recommendation adopted*, 2019 WL 5445296 (E.D. Va. Oct. 23, 2019)).)  But in *McCaffrey,* plaintiff identified six substantiated incidents of prior sexual assaults to support her allegation that there was a "pattern in history" of sexual misconduct at the jail, in addition to alleging that the jail authority's lack of response to each incident demonstrated a "custom or policy" of ignoring claims of sexual assault.  *McCaffrey*, 2019 WL 5445752, at *3.  In contrast, Boyd-Nordstrom fails to connect the two instances of misconduct against him with a general policy on the use of force at the jail or allege any facts about RSWRJA's treatment of other pretrial detainees. Ultimately, Boyd-Nordstrom has not alleged sufficient facts to support the inference that RSWRJA was deliberately indifferent to "persistent and widespread" unconstitutional practices by its employees.  *Spell*, 824 F.2d at 1387.

Boyd-Nordstrom has failed to plead facts that plausibly establish that his constitutional deprivation "occurred pursuant to a policy or custom adopted by the local governing body." *Scheffer*, 2024 WL 2958952, at *6 (quoting *Monell*, 436 U.S. at 690).  Because Boyd-Nordstrom has not alleged sufficient facts to state a *Monell* claim, Count I will be dismissed as to Defendant RSWRJA.

## IV.    Conclusion

For the foregoing reasons, RSWRJA's motion to dismiss will be granted.  (Dkt. 13.) The claim against RSWRJA in Count I will be dismissed without prejudice, and RSWRJA will be dismissed from this action.

An appropriate Order will issue.

**ENTERED** this <u>14th</u> day of July, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE